Good morning. May it please the Court. My name is Steve Weinman. I'm with Audutin Partners, LLP, representing plaintiffs Ken Morris and Adam Backhaut. This is an important case to a lot of people. For better or worse, people's lives are lived online these days. And when you don't get a message, you think something's wrong or you miss an important meeting. So there's strong reasons why this Wiretap Act claim needs to be interpreted in such a way that the wiretap keeps its protection for people. The district court's analysis in Apple's arguments as to why the wiretap claim was not stated here are there was no interception because the message was not being transmitted when it was misdirected. There's no device because the iMessage server is used for text messaging generally. And the iMessage server was acting in the ordinary course of business, which is an exception to liability. None of these grounds have merit. Focusing first on the issue of whether it was in transmission, the characterization that the Court accepted was when it's misdirected, it's not in transmission. And then also later when it's sent from the phone, it's not in transmission. So essentially it's never in transmission according to their view of things in the Court's order. When a person with an iPhone attempts to send a text message to another person who also has an iPhone and is registered in this iMessage system, it first asks, you press the send button and it first asks this, it's called the IDS directory system, and it asks whether the other person is registered. If it gets a yes, it tries to send it as an iMessage, and it goes through the iMessage server. If it doesn't get a yes message, it sends it as a short message system or an MMS system. Then it goes through the phone carriers, and people who don't have iPhones, that's what they use. In this instance, though, because of problems with the way the IDS system was set up, when someone leaves the Apple universe and decides they don't want an iPhone anymore, people can still try to send them messages. And there was a problem with the Apple system where it would wrongfully tell the people's phones that were sending it, yes, it's okay to send as an iMessage. Well, once that happens, and this is seamless from the person sending its point of view, it just looks it up and it sends it. It's gone instantaneously. But because it's been misdirected, it goes to the iMessage server and it can't go any further because it can't leave. All of those messages that are misdirected can't leave. So it's in transmission when it's leaving the phone. And there's no basis in the statute or in the Knopp case. Sotomayor, it seems like, and I think this is where you're going, but if I understand it correctly, it seems like you're arguing, at least in your briefs, that the court improperly required the plaintiffs to show that interception under the Wiretap Act must be a one-step process. It seems like you're challenging that. But I'm just trying to figure out what authority you might have for the proposition that this transmission can occur in a two-step process. Well, it's the way the statute is written. It says in transmission. I mean, Apple all but concedes in its brief that it is in transmission and tries to say, no, no, we're over here with the acquisition. But the acquisition has to be happening when it lands in the iMessage server because it's not going anywhere. Apple has it. It's stored there. It's not in temporary storage before that. When this first phone directory lookup happens, it's not being sent. It's just a query. But that's part of the whole iMessage system, the server and the IDS system, which is a device. Well, I guess I'm just trying to figure out how you reconcile what I would call it. I guess I was describing it as a two-step process. I don't know that you would call it a two-step process. But what you just described here with the requirement under the, is it CONOP versus Hawaiian Airlines, that interception must occur during transmission. How is that? I'm just trying to figure that out. Under your theory, what is the transmission and what is the interception? So the transmission is when it's leaving the phone. But part of that is because it's already been told to go to the wrong place. It's as if Apple whispered it in the phone's ear, no, send it there. Then it goes to the iMessage server and it can't leave. So it's already doomed to end up there once it leaves the phone. So, yes, it's a two-step process and there are two things that happen. But it's all part of the same universe. It's the same device and system which this IDS system is part of. So the transmission, though, it's clearly leaving the phone. It's trying to go there. An analogy I used in the brief was if a post office tells you to send to the wrong place, there's no zip code, it ends up in a dead letter file. It's the same as if you were actually physically in the post office and somebody said, oh, no, put it in that one there, and it's the dead letter file. It's in transmission. You were sending it. You were putting it in the envelope, but it can't go anywhere. So you were trying and the senders were trying to send this message forward. But it was in transmission. It was leaving the wires, as it were. And that's all that's required under the Act. I mean, failing this, the reason we think this is really an important issue, companies could set up or nefarious people, it doesn't have to be nefarious under the Act, they could set it up so, oh, it's a two-step process, we're not intercepting because we did something first that caused it to be intercepted later while it was being transferred. If it can't be transferred to the ultimate end user in the first place, it's stored for a period of time, during which time it still could be transferred, correct? That's not pertinent to this issue, Your Honor, because in the way we define the class, it's people who don't have iPhones anymore. So we're not talking about people where that might be the case. Kennedy, you and I are talking about two different things. What I'm trying to understand here is whether it's still in transmission while it's in storage before it can go to the end user. I don't believe so, Your Honor. All right. Fine. Another point I wanted to make is that this is a device. That was another point that Apple made. It's a device. They were claiming there was no device, and that's what the Court held, because it's used in the ordinary course of business. But she focused on the iMessage server. And we didn't say in our briefing it's just the server. I mean, maybe she got that impression. But the IES system is part of the overall internet messaging system. So that is also a device, and it's part of a whole system. So as Judge Koh herself has held in her Google privacy case, it's not necessary to do something that's ordinarily part of the regular course of business if it's used improperly. Where do you argue that it is the system and not the server? We cited that in our brief. Oh, no. To the district court down below, where do you argue that? Because I couldn't find it. Let me think about that. You can look it over during your break and come back and tell me. Yeah. I'll come back for like a couple minutes as rebuttal. Okay. But there is a part where we mentioned what it was. And in the footnote, we mentioned that the IES system is part of it. And we did reference that in our brief on appeal. And again, as long as Judge Koh has held, this should be a narrow exception. And I believe it might be ER, let's see, ER 1. I'll find it on the break as you say, Your Honor. This is clearly a device. It's one and the same thing. To just separate them out doesn't make any sense because it's part of the system that goes through. As to the issue of the class certification order, I'd just like to point out the issue of standing to bring the claim. It's undisputed that there's at ER 156, I think it is, that the message can't leave me, excuse me, that once you have an ongoing message as a conversation, indefinitely the message can still be misdirected. Even if you haven't had an iPhone for a year, if somebody has an old conversation, it could be sent there. And nothing that Apple has said really disputes that. What do we do? It seems like both Mr. Backhart and Morris have admitted their problems receiving the text have been resolved. That's not entirely accurate, Your Honor. And they thought they were, and then there was, as is in the record, and I think as Judge Koh noted, when there was a new iOS system, it recurred. I think that was as to Mr. Morris. And as I said, there is in the, in the. I guess, what's the threat? I mean, if you say there's, what's the threat of immediate harm? And here. The threat of immediate harm is that someone with an existing conversation on their phone will try to send them the message and it won't go through. And that can happen forever. I mean, Apple tried to argue and cited, cited authority that, you know, this is stopped after 48 hours, and that's what the district court accepted. But that's not the case. It can happen indefinitely. And we cited a help page for, for Apple which, which says that. That this, this conversation, and it's in their supplemental excerpts of record at 43, 43 to 46, it can happen indefinitely. So the instant harm is, because they've had iPhone conversations before with these people, they try to go back to that old conversation and send it to them, even though they no longer have an iPhone, it can happen. It's happened to me. I had an iPhone. And people try to send it to them. They're like, why aren't you getting it? Because it was toggled off. So it's a very similar situation. They were using an old conversation. They were being told, oh, it's delivered, and it wasn't. As to the class, I'm sort of running out of time here, but as to the class certification, the, they do have standing because of that. And as a result, we think the order should be reversed and they should be allowed to bring at least an injunctive relief claim under, under 23b-2 or a b-4 liability only class. And as to the damages class, Judge Koh at pages ER-2425 used administratively feasible to discuss why she wasn't granting it. And we think that the Bursena v. ConAgra Foods 844F3-1121 case, which came out subsequently, says that that's not a proper test for class certification. It should be sent back to her on that ground alone. And I'll reserve the rest of my time unless the Governor has a question. Thank you. Thank you, Your Honor. I'm Joseph Palmore here on behalf of Apple. Congress enacted the Wiretap Act to protect the confidentiality of communications and thus the privacy of those communicating. The statute was never intended to punish the less-than-perfect operation of complex communication systems. Yet that is how plaintiffs are seeking to deploy it here. They want to use the Wiretap Act, which is a criminal statute, to punish and regulate the nondelivery of text messages. Given that fundamental contradiction between the aims of the statute and plaintiffs' claim, it's not surprising that it suffers from multiple independent defects. Plaintiffs offered no evidence that communication was acquired while in transmission, no evidence that the equipment at issue was operating in anything other than the ordinary course of business, and no evidence that Apple ever acquired the contents of their text messages. What's the foundation of your logic that they don't acquire the contents because they're encrypted? I mean, the fact that they're encrypted, you still have it. You just can't read it. That's correct, Your Honor, because contents is actually a defined term under the statute, and contents are defined as any information concerning the substance, purport, or meaning of that communication. And this Court in Enrizinga said, again, that contents means you know what was said. This, again, this is a privacy statute, so. As opposed to you could know what was said if you can break the encryption. Correct, Your Honor. If you – if I'm holding a sealed envelope. The statute draws that line? Absolutely it does, and the courts have consistently drawn that line, too. This Court in Enrizinga, the Fourth Circuit in Sanders, have said that because there are other parts of the statute. This is a complex regulatory scheme. There are other parts of the statute that may cover other kinds of calling information, who was being called, the route that it took. But if you're bringing a wiretap act claim, you have to show that the contents were acquired. Think about the classic wiretap, which is someone kind of listening in on a phone call. That's what's required here. Now, Judge Koh didn't find it necessary to reach this question, but we think this provides a quite compelling additional basis for affirming, because it is undisputed here that all of these text messages were encrypted end-to-end. It is undisputed that Apple could not access them. Not only that it didn't, but it could not. That's ER 238 through 239, the Wood Declaration. And plaintiffs haven't suggested otherwise. So because Apple never acquired the contents of these communications, there can't be a wiretap act claim. But, of course, that's only one of the three problems with the claim that we've advanced here. The first is the one that Judge Merguia was questioning my friend on the other side about, which is that there was no acquisition of a communication while it is in — while it was in transit. This Court in Conop construed definitively this in-transmission requirement and said the wiretap act applies to the acquisition of a communication while it's in the air at the speed of light. And there may be other statutes, the Stored Communications Act, the Computer Fraud and Abuse Act, that may cover other kinds of conduct as, for instance, accessing stored communications or invading someone's computer in order to acquire communications. But the wiretap act requires that the acquisition happen while the communication is in transit. And here, plaintiffs have never been able to satisfy that requirement. All the messages are sent to the iMessage server. Everything is sent as an iMessage. They certainly can't and aren't arguing that every single message sent to the iMessage server is intercepted for purposes of the wiretap act. Moreover, they acknowledge that when a user has the send as SMS toggle on, that there's no wiretap act violation. In that situation, the message still goes to the iMessage server and isn't delivered via that route. But five minutes later, it's sent as a text message under the SMS system. And, again, so they aren't able to locate an actual transmission where the message is kind of plucked out of the air and acquired by someone. Their real complaint, and this is at page 29 of their brief, they say the problem here is that the iMessage server can't convert and pass on the message to a non-iMessage user. But, of course, once it's in the server, it is in storage. And this Court in CONOP definitively held that something in storage is not covered by the wiretap act, even if it's incidental, even if it's momentary, even if it's on the way. That's not covered. Again, it may be covered by other statutes, but it's not covered by the wiretap act. The second basis that Judge Koh granted summary judgment to Apple on was the fact that the equipment at issue here was being operated in the ordinary course of business. This is a complex communication system. She explained how it works at ER 257 to 259. Many of the details are under seal. But, in this case, this system exists in order to pass on messages. And each piece of it exists in order to deliver messages. The only argument made below was that the iMessage server was the device. If you look at the pages that Judge Merguia, my friend on the other side, will cite to you for supposedly preserving this argument below, they were simply just describing the system. They never argued that the system as a whole was a device. So that argument is waived. In any event, it doesn't really matter because the system as a whole is designed. Its purpose is to deliver messages. Their argument is, well, it couldn't be operating the ordinary course of business because it doesn't always work. But that's not the standard. Again, the wiretap act is not a warranty statute. It's not a consumer protection statute. It's not a communications regulation statute. It's a privacy statute. So just because the device doesn't work 100 percent of the time doesn't make it a device for purposes of the wiretap act. And holding otherwise would open the floodgates to all manner of claims against communications providers anytime their systems don't work. Wasn't there admittedly a flaw in the system, though, that suggested to the sender that it was being delivered when, in fact, it was not? There's been a recognized issue, Judge Rintzer, from the beginning that when someone switches away and doesn't deregister for the system, there may be a delay and that message may not go through if the person doesn't deregister from the system. So the sender is misinformed in that situation? The record isn't entirely clear on that point, Judge. The plaintiff said that that was the case. And I don't think it matters for purposes of this. This is not a fraud or misrepresentation case. This is a wiretap act case. I think we can stipulate that there are some messages that don't go through and the system doesn't work 100 percent of the time. And Apple adopted a number of fail-safe systems to address that problem. And I think if you read the e-mails, again, many of them are under seal, you see the Apple employees quite diligently working through this and coming up with any number of redundant systems for solving this problem. And the plaintiffs here have said that the problem is solved for them. So the record below is not adequate to address whether or not this flaw in the system would interfere with the ordinary course of business? No. The record is absolutely clear, Your Honor, because they made no showing. It's their burden. They're the plaintiffs. They have to show that the equipment was not being used in the ordinary course of business. And it clearly was. The Apple's business, this part of Apple's business is to endeavor to deliver text messages. The fact that it doesn't always work 100 percent of the time doesn't make the equipment a device for purposes of the Wiretap Act. Regular SMS messages don't go through 5 percent of the time. That's in the record in this case. But would we even reach the ordinary course of business exception if there's a finding that there was no acquisition of the messages during transmission? You don't need to, Your Honor. There are three independent bases for affirming the summary judgment motion here. One is that there was no acquisition during a transmission. Two is that there was no showing that the equipment here was operating in anything other than the ordinary course of business. And three is that the one that Judge Code didn't find it necessary to address is that there was no acquisition of the contents of any communications. Each of those. Well, I didn't mean to interrupt your finishing your answer. I was just going to say that each of those is an independent basis for affirmance, Judge Gould. Well, on a different issue, what I wanted to know was when you said it was the plaintiff's burden to show this was not in the ordinary course of business. And I was just wondering if there are cases that say that because I would initially have thought that this was sort of like an affirmative defense on the statute so that the burden might be on Apple to show that it was in the ordinary course. Your Honor, I'm not aware of cases specifically addressing that burden issue. It's not if you look at the structure of the act. It's not an affirmative defense. It's part of the definition of a device. The Wiretap Act only applies to acquisitions of communications using a device. And then if you look at the definition of device, there's a carve out for equipment used in the ordinary course of business. Okay. So to show that a device is being used, they have to show that it's not in the ordinary course of business. That's right, Judge Gould. I think they do. I think regardless of who bears the burden, the outcome here is the same because there is no evidence that this wasn't being used in the ordinary course of business and Apple provided evidence, and this is the Wood Declaration at ER 238 through 240, that this equipment all was being used in the ordinary course of business. Really, the argument on the other side is, well, your businesses deliver text messages. So if it doesn't work, if the message doesn't go through, then that can't be part of the ordinary course of business. But that's not this test. Could I go back to Judge Mergia's question again? I have some sympathy with the idea that if CONOP controls, and this message is never intercepted in transit, that we're bound by that case. So I wasn't sure why we would go on to discuss the other two arguments you're making. There's absolutely no reason for you to, Judge Gould. I'm trying to be complete here. If you want to affirm just on that basis, that's perfectly fine with us. We agree that CONOP is completely controlling on this question. It was later followed by this Court's decision in Theofel as applied to email. We think the law in this circuit is quite clear that the acquisition has to happen in a contemporaneous fashion with transmission, and that's a fully sufficient basis for affirming here. Our only point is that there are yet other bases for affirming. I understand that. Are there other circuits that have dealt with the CONOP point? Well, the Fifth Circuit has, Your Honor. In fact, CONOP based a lot of its analysis on a Fifth Circuit decision called Steve Jackson Games that we discuss in our brief. And that court did a fairly exhaustive analysis of the statute and concluded that it applied only to acquisition of communications while in transmission and not while in storage. So is there no published circuit court opinion in a different circuit disagreeing with CONOP? Your Honor, I'm not aware of any, and certainly the other side hasn't cited any. I can say that with confidence. And they haven't suggested that this court could or should not follow CONOP because of some kind of disagreement. And I think the analysis in CONOP, it's not just that the precedent is there, although that's sufficient. The statutory analysis in CONOP is quite compelling, and the court pointed to a number of different factors. The fact that the word intercept, and it's cited a dictionary definition, means to arrest something in flight while it's in movement. The court looked at the definition of electronic communications, which requires a transfer. The court looked at the structural difference between the Wiretap Act and the Stored Communication Act and said, to use a shorthand, that the Wiretap Act applies to data in flight while the Stored Communication Act applies to data at rest in storage. And the court looked to the history of the statute and the fact that the definition of wire communications had in an earlier version of the statute actually applied to data in storage while the definition of electronic communication never did. So the court in CONOP did a fairly exhaustive analysis of the statute before arriving to the conclusion that it arrived at. Your Honor, just as the court doesn't need to reach the other bases for summary judgment, it doesn't need to reach any of the class action issues if it affirms the summary judgment motion because those issues would basically be moot. I will briefly address the standing issue because my friend on the other side did. Judge Koh made a factual finding at ER 20 through 21 that neither of these plaintiffs are suffering from this issue anymore, and neither had established any reasonable likelihood that they would suffer from it again. Speculation isn't enough under Chapman and the City of Los Angeles v. Lyons. To get injunctive relief, a plaintiff has to show a reasonable likelihood that he will face this problem again. And there's a factual finding at ER 20 through 21 that these plaintiffs can't make that showing, and there's no showing on the other side that that factual finding was clear error. I'm happy to address any other issues, questions the Court has. If not, we ask that the judgment below be affirmed. Thank you. I can't answer Judge Mergui's question. It's ER 167, which is Plaintiff's Opposition to Apple's Motion for Summary Judgment. There's an entire paragraph which discusses how this system works, and it starts out, lastly, should there be any question that Apple uses a device? It describes what some of the engineers said about it. And then in the footnote, as part of that paragraph, it says it includes the IDS system. And we know where in that paragraph do we say the device is only the server. It says, accordingly, there is evidence that Apple used a device to intercept plaintiff's messages. As to the fact that this is a criminal statute, there is a private right of action. So it's not that there's mudslinging going on as to Apple. This is simply the way the law is written, and we're allowed to have a private right of action. As far as the device being used in the ordinary course of business, Judge Koh even acknowledged in her Google privacy case, if something is in the ordinary course of business ordinarily, but it's being used in a different manner, and in this case, the IDS system is being used in a different manner, it can be a device. And in this instance, the way the IDS directory is set up, X users never get their messages through iMessage anyway. So the fault of them designing this and directing it and then not having a way for it to leave, that is the device, and it's absolutely being used not in the ordinary course of business, which is to send it along. As to this class of people, it's being used improperly to stop them from getting their messages. And Apple hasn't bothered to fix it. As to the English version... Counsel, as to your position on the first issue that was raised by Apple, that is whether there was an interception in transit, how do you propose to get past CONOP or distinguish it? Well, Your Honor, I don't think we need to get past CONOP because they acquire the entire contents. And as far as being able to read it, there's nothing in the statute that said you have to be able to read it contemporaneously. If it was in Russian and they couldn't read it when they got it, they could learn Russian. They could get a decrypting device. I'm sure Apple could do this if they really wanted to read these messages. But they've acquired the entire message as soon as it is sent to the iMessage server. So we don't need to get around to CONOP. It's being transmitted from the phone at the time it's acquired. And because it's already been misdirected as part of this sort of two-step process, it's not going to leave. Does that answer your question? I think so. Does the Court have any other further questions? The Zynga and Sanders cases, I will say, don't say that it has to be, you know, if it's encrypted. They simply say that the contents, you have to get the contents. They have the whole message. The whole thing is sitting there. It's not that just they have envelope imprints. It's sitting there in the iMessage server for some period of time. So thank you. Thank you. Thank you both, Mr. Weinman and Mr. Palmore, for your arguments here today. The matter of Adam Backhart and Kenneth Morris v. Appleton is now submitted.
judges: Gould, Murguia, Gritzner